UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| LITTLE STARS CORPORATION d/b/a THE LITTLE GYM OF GILBERT,<br><br>    Plaintiff,<br><br>    v.<br><br>HARTFORD UNDERWRITERS INSURANCE COMPANY; THE HARTFORD FINANCIAL SERVICES GROUP, INC. d/b/a THE HARTFORD; and SENTINEL INSURANCE COMPANY, LTD.,<br><br>    Defendants. | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Little Stars Corporation d/b/a The Little Gym of Gilbert ("Plaintiff" or "Little Stars") brings this Complaint, alleging against Defendants Hartford Underwriters Insurance Company, The Hartford Financial Services Group, Inc. d/b/a The Hartford, and Sentinel Insurance Company, Ltd. ("Defendants" or "The Hartford") and alleges as follows:

### NATURE OF THE CASE

1.  This is a civil action seeking declaratory relief arising from Plaintiff's contract of insurance with Defendants.

1

2.   In light of the Coronavirus global pandemic and state and local orders mandating that all non-essential in-store businesses must shut down, Plaintiff shut its doors for customers on March 16, 2020.

3.   Plaintiff's insurance policy provides coverage for all non-excluded business losses, and thus provides coverage here.

4.   As a result, Plaintiff is entitled to declaratory relief that its business is covered for all business losses that have been incurred in an amount greater than $150,000.00.

**JURISDICTION**

5.   This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship between Plaintiff and Defendants. Further, Plaintiff has suffered business losses in an amount greater than $150,000.00. The amount in controversy necessary for diversity jurisdiction over a declaratory judgment action is measured by the value of those business losses. *Id.* § 1332(a).

6.   This Court has personal jurisdiction over Defendants because it is headquartered in Connecticut. At all relevant times Defendants have engaged in substantial business activities in Connecticut. At all relevant times Defendants transacted, solicited, and conducted business in through its employees, agents, and/or sales representatives, and derived substantial revenue from such business in Connecticut.

7.   Venue is proper in this district pursuant to 28 U.S.C. § 1391(c) because Defendants are corporations that have substantial, systematic, and continuous contacts in Connecticut and

within the District of Connecticut. Further many of the Defendants' decisions that were made with regard to Plaintiff's policy were made in Connecticut.

## PARTIES

8. At all relevant times, Plaintiff Little Stars is authorized to do business in Arizona. Little Stars owns, operates, manages, and/or controls a gym located at 538 S. Gilbert Road #109, Gilbert, Arizona 85296. Dean Schroeder and Carol Schroeder each own Little Stars. Dean Schroeder and Carol Schroeder are citizens of Arizona.

9. Defendants are an insurance carrier that provides business interruption insurance to Plaintiff. The Hartford is headquartered at One Hartford Plaza, Hartford, Connecticut 06155.

10. At all relevant times, Defendants issued a policy to Little Stars effective January 30, 2020 until January 30, 2021. The policy number is 59 SBA PG1004 SC. *See* Declaration, attached as Exhibit 1 ("Policy").

11. The Policy is currently in full effect in providing, among other things, personal property, business income and extra expense, contamination coverage and additional coverage.

12. Plaintiff submitted a claim for a date of loss of March 16, 2020 pursuant to its policy. Defendants rejected Plaintiff's coverage finding that the Civil Authority Coverage did not apply because Plaintiff did not suffer damage to its property. Defendants also denied coverage under the Contingent Business Interruption because of lack of damage to the property. Finally, Defendants rejected coverage because of its Virus Exclusion Clause.

## FACTUAL BACKGROUND

### I. Insurance Coverage

13. Plaintiff faithfully paid policy premiums to Defendants, specifically to provide, among other things, additional coverages in the event of business interruption or closures by order of Civil Authority.

14. Under the Policy, insurance is extended to apply to the actual loss of business income sustained and the actual, necessary and reasonable extra expenses incurred when access to the Insured Property is specifically prohibited by order of civil authority as the direct result of a covered cause of loss to property in the immediate area of Plaintiff's Insured Property. This additional coverage is identified as coverage under "Civil Authority."

15. The Policy is an all-risk policy, insofar as it provides that covered causes of loss under the policy means direct physical loss or direct physical damage unless the loss is specifically excluded or limited in the Policy.

16. Based on information and belief, Defendants have accepted the policy premiums with no intention of providing any coverage for business losses or the Civil Authority extension due to a loss and shutdown. The Virus Exclusion does not apply this pandemic.

### II. The Coronavirus Pandemic

17. The scientific community, and those personally affected by the virus, recognize the Coronavirus as a cause of real physical loss and damage. It is clear that contamination of the

4

Insured Property would be a direct physical loss requiring remediation to clean the surfaces of the gym.

18. The virus that causes COVID-19 remains stable and transmittable in aerosols for up to three hours, up to four hours on copper, up to 24 hours on cardboard and up to two to three days on plastic and stainless steel. *See* https://www.nih.gov/news-events/news-releases/new-coronavirus-stable-hours-surfaces (last visited April 9, 2020).

19. The CDC has issued a guidance that gatherings of more than 10 people must not occur. People in congregate environments, which are places where people live, eat, and sleep in close proximity, face increased danger of contracting COVID-19.

20. The global Coronavirus pandemic is exacerbated by the fact that the deadly virus physically infects and stays on surfaces of objects or materials, "fomites," for up to twenty-eight (28) days.

21. China, Italy, France, and Spain have implemented the cleaning and fumigating of public areas prior to allowing them to re-open publicly due to the intrusion of microbials.

**III.   Civil Authority**

22. On March 11, 2020, the Governor of Arizona declared a Public Health Emergency related to the COIVD-19 pandemic.

23. On March 15, 2020, the Governor of Arizona closed all public schools.

24. On March 17, 2020, the Governor of Arizona declared that all gatherings of more than 10 people were discouraged.

25. On April 1, 2020, the Governor of Arizona issued the closure of non-essential businesses, including businesses like the Plaintiff. This order was in effect until at least April 30, 2020.

26. On April 29, 2020, the Governor of Arizona extended the closure until at least May 15, 2020.

27. Plaintiff's business is unable to operate due to the stay-at-home orders for public safety issued by the Governor of Arizona and has submitted a claim to their insurance carrier related to such loss.

28. Further, on April 10, 2020, President Trump seemed to support insurance coverage for business loss like that suffered by the Plaintiff:

> REPORTER: Mr. President may I ask you about credit and debt as well. Many American individuals, families, have had to tap their credit cards during this period of time. And businesses have had to draw down their credit lines. Are you concerned Mr. President that that may hobble the U.S. economy, all of that debt number one? And number two, would you suggest to credit card companies to reduce their fees during this time?
>
> PRESIDENT TRUMP: Well it's something that we've already suggested, we're talking to them. ***Business interruption insurance***, I'd like to see these insurance companies—you know you have people that have paid. When I was in private I had business interruption. When my business was interrupted through a hurricane or whatever it may be, I'd have business where I had it, I didn't always have it, sometimes I had it, sometimes, I had a lot of different companies. *But if I had it I'd expect to be paid.* You have people. I speak mostly to the restaurateurs, where they have a restaurant, they've been paying for 25, 30, 35 years, business interruption. They've never needed it. All of a sudden they need it. And I'm very

> good at reading language. I did very well in these subjects, OK. And I don't see the word pandemic mentioned. Now in some cases it is, it's an exclusion. But in a lot of cases I don't see it. I don't see it referenced. And they don't want to pay up. I would like to see the insurance companies pay if they need to pay, if it's fair. And they know what's fair, and I know what's fair, I can tell you very quickly. But business interruption insurance, that's getting a lot money to a lot of people. And they've been paying for years, sometimes they just started paying, but you have people that have never asked for business interruption insurance, and they've been paying a lot of money for a lot of years for the privilege of having it, and then when they finally need it, the insurance company says 'we're not going to give it.' We can't let that happen.

*See* https://youtu.be/cMeG5C9TjU (last visited on April 17, 2020) (emphasis added).

29. The President is articulating a few core points:

   a. Business interruption is a common type of insurance.

   b. Businesses pay in premiums for this coverage and should reasonably expect they'll receive the benefit of the coverage.

   c. This pandemic should be covered unless there is a specific exclusion for pandemics.

   d. If insurers deny coverage, they would be acting in bad faith.

30. These Orders and proclamations, as they relate to the closure of all "non-life-sustaining businesses," evidence an awareness on the part of both state and local governments that COVID-19 causes damage to property. This is particularly true in places where business is conducted, such as Plaintiff, as the requisite contact and interaction causes a heightened risk of the property becoming contaminated.

**IV.   Impact on Plaintiff**

7

31. As a result of the Orders referenced herein, Plaintiff shut its doors to customers on March 17, 2020 and continues to be shutdown.

32. Plaintiff suffered loss prior to the shutdown of its gym on March 17, 2020. The loss also began with social distancing restriction provided by the state.

33. Plaintiff's business is not a closed environment, and because people – staff, customers, community members, and others – constantly cycle in and out of the gym, there is an ever-present risk that the Insured Property is contaminated and would continue to be contaminated.

34. Businesses like the Plaintiff are more susceptible to being or becoming contaminated, as both respiratory droplets and fomites are more likely to be retained on the Insured Properties and remain viable for far longer as compared to a facility with open-air ventilation.

35. Plaintiff's business is also highly susceptible to rapid person-to-property transmission of the virus, and vice-versa, because the service nature of the business places staff and customers in close proximity to the property and to one another.

36. The virus is physically impacting Plaintiff. Any effort by Defendants to deny the reality that the virus causes physical loss and damage would constitute a false and potentially fraudulent misrepresentation that could endanger Plaintiff and the public.

37. A declaratory judgment determining that the coverage provided under the Policy will prevent Plaintiff from being left without vital coverage acquired to ensure the survival of the business due to the shutdown caused by the civil authorities' response is necessary. As a result of

these Orders, Plaintiff has incurred, and continues to incur, among other things, a substantial loss of business income and additional expenses covered under the Policy.

## CAUSE OF ACTION

## DECLARATORY RELIEF

38. Plaintiff re-alleges and incorporates by reference into this cause of action each and every allegation set forth in each and every paragraph of this Complaint.

39. The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that in "a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a);

40. An actual controversy has arisen between Plaintiff and Defendants as to the rights, duties, responsibilities and obligations of the parties under the Policy in that Plaintiff contends and, on information and belief, Defendants dispute and deny that:

   a. The Orders constitute a prohibition of access to Plaintiff's Insured Property;

   b. The prohibition of access by the Orders has specifically prohibited access as defined in the Policy;

   c. The Policy's Exclusion of Loss Due to Virus or Bacteria does not apply to the business losses incurred by Plaintiff here. It does not apply to this pandemic;

   d. The Orders trigger coverage;

   e. The Policy provides coverage to Plaintiff for any current and future civil authority closures of business in Arizona due to physical loss or damage directly

       or indirectly from the Coronavirus under the Civil Authority coverage parameters;

f. The Policy provides business income coverage in the event that Coronavirus has directly or indirectly caused a loss or damage at the insured premises or immediate area of the Insured Property; and

g. Resolution of the duties, responsibilities and obligation of the parties is necessary as no adequate remedy at law exists and a declaration of the Court is needed to resolve the dispute and controversy.

41. Plaintiff seeks a Declaratory Judgement to determine whether the Orders constitute a prohibition of access to Plaintiff's Insured Property as Civil Authority as defined in the Policy.

42. Plaintiff further seeks a Declaratory Judgement to affirm that the Order triggers coverage.

43. Plaintiff further seeks a Declaratory Judgment to affirm that the Policy provides coverage to Plaintiff for any current and future Civil Authority closures of business in Arizona due to physical loss or damage from the Coronavirus and the policy provides business income coverage in the event that Coronavirus has caused a loss or damage at the Insured Property.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff herein prays as follows:

a. For a declaration that the Orders constitute a prohibition of access to Plaintiff's Insured Property.

b. For a declaration that the prohibition of access by the Orders is specifically prohibited access as defined in the Policy.

c. For a declaration that the Orders trigger coverage under the Policy.

10

    d. For a declaration that the Policy provides coverage to Plaintiff for any current, future and continued civil authority closures of businesses in Arizona due to physical loss or damage directly or indirectly from the Coronavirus under the Civil Authority coverage parameters.

    e. For a declaration that the Policy provides business income coverage in the event that Coronavirus has directly or indirectly caused a loss or damage at the Plaintiff's Insured Property or the immediate area of the Plaintiff's Insured Property.

    f. For such other relief as the Court may deem proper.

## **TRIAL BY JURY IS DEMANDED**

Plaintiff hereby demands trial by jury.

Dated: May 4, 2020

                                                 Respectfully submitted,

                                                 */s/ Neal Moskow*
                                                 Neal Moskow, Esq.
                                                 **URY & MOSKOW**
                                                 883 Black Rock Turnpike
                                                 Fairfield, CT 06825
                                                 Telephone: (877) 410-7259
                                                 Facsimile: (203) 610-6399

Arnold Levin, Esq.
Laurence Berman, Esq.
Frederick Longer, Esq.
Daniel Levin, Esq.
**LEVIN SEDRAN & BERMAN LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106-3697
Telephone: (215) 592-1500
alevin@lfsblaw.com
flonger@lfsblaw.com
dlevin@lfsblaw.com

Richard M. Golomb, Esq.
Kenneth J. Grunfeld, Esq.
**GOLOMB & HONIK, P.C.**
1835 Market Street, Suite 2900
Philadelphia, PA 19103
Telephone: (215) 985-9177
Facsimile: (215) 985-4169
rgolomb@golombhonik.com
kgrunfeld@golombhonik.com

Aaron Rihn, Esq.
**ROBERT PEIRCE & ASSOCIATES**
707 Grant Street, Suite 125
Pittsburgh, PA 15219
Telephone: (412) 281-7229
Facsimile: (412) 281-4229

W. Daniel "Dee" Miles, III  
Rachel N. Boyd  
Paul W. Evans  
**BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**  
P.O. Box 4160  
Montgomery, AL 36103  
Telephone: (334) 269-2343  
Facsimile: (334) 954-7555  

*Counsel for Plaintiff*